

# IN THE
# TENTH COURT OF APPEALS

## No. 10-13-00411-CV

NANCY ANN SCOTT,

Appellant

 v.

HAMILTON COUNTY, HAMILTON ISD,
CITY OF HAMILTON, HAMILTON COUNTY
AND HAMILTON HOSPITAL DISTRICT, ET AL,

Appellees

**From the 220th District Court
Hamilton County, Texas
Trial Court No. TX02890**

## MEMORANDUM OPINION

In five issues, appellant, Nancy Ann Scott a/k/a Anne; surnamed scott, complains about a judgment entered in favor of appellees, Hamilton County, the Hamilton Independent School District, and the Hamilton Hospital District, in a suit for the recovery of delinquent ad valorem taxes. We affirm.[1]

---

[1] In light of our disposition, we dismiss all pending motions as moot.

# I.    BACKGROUND

On June 6, 2013, appellees filed suit against appellant for the recovery of delinquent ad valorem taxes under section 33.41 of the Tax Code.  *See* TEX. TAX CODE ANN. § 33.41 (West 2008).  Appellees alleged that appellant had not paid taxes for tax years 2010, 2011, and 2012 on two tracts of land that appellant had inherited.  According to appellees' original petition, the aggregated amount of taxes owed by appellant was $11,191.79.  In response to appellees' original petition, appellant filed a pro se "Counter Suit" on July 5, 2013.[2]

Thereafter, appellees filed an original answer, denying "each and every allegation" contained in appellant's "Counter Suit."  Appellees also filed a first amended petition, which, among other things, recalculated the aggregated amount of taxes owed by appellant to be $11,777.61.  Appellant responded to appellees' first amended petition by filing a pro se "Counter Suit[,] Plaintiff's Plea[,] and Original Answer" the day before trial.  Included in appellant's filing was a general denial and requests for a jury trial and the "appointment of stand-by assistance of counsel."[3]

---

[2] With regard to appellees' original petition, appellant stated in her "Counter Suit" that "All documents were received but not accepted."  Furthermore, in her testimony, appellant admitted that she did receive service of appellees' original petition.

[3] Appellant also asserted the following:

Whereas the properties described in said suit are ministerial/congregational in nature, and said Congregation is by faith, doctrine, belief[,] and practice unincorporated, that being a form of modern idolatry which posits a dead thing as a "person" before the law, and;

On November 13, 2013, the trial court held a docket call at which appellant announced, without any objection, that she was ready to proceed to trial. Later that morning, the case was called to trial, and appellant once again failed to object to proceeding. In any event, appellant requested a jury trial, which the trial court denied as untimely.

At the conclusion of the evidence, the trial court entered a judgment in favor of appellees for the amount of the delinquent ad valorem taxes. Appellant filed numerous post-judgment motions in the trial court, including a request for findings of fact and conclusions of law and an affidavit of indigence. In response to contests filed by the court reporter and the Hamilton County District Clerk, the trial court conducted a hearing on appellant's affidavit of indigence and ultimately concluded that appellant "is not indigent and the filed contests should be sustained." Additionally, the trial court entered findings of fact and conclusions of law in this matter. This appeal followed.

## II.    APPELLANT'S COMPLAINTS ABOUT NOTICE AND SERVICE

In her first and fourth issues, appellant contends that appellees did not properly serve her with copies of appellees' original and first amended petitions or provide her proper notice of the November 13, 2013 hearing. At trial, appellant admitted receiving notice of appellees' June 6, 2013 original petition. She also acknowledged that she answered the lawsuit in July and that she was given notice of the hearing that occurred

Whereas the Plaintiff in Counter Suit is neither a tax-payer[,] nor resident or registered voter of the state of Texas, but rather is a Sovereign of the Land and a member in good standing of said Congregation . . . .

on November 13, 2013.[4]  Furthermore, in her "Counter Suit," appellant stated that, with

regard to appellees' original petition, "[a]ll documents were received but not accepted."

It is also noteworthy that appellant responded to each of appellees' filings—a fact that

belies her argument about lack of notice.  Other than unsupported assertions made in

her appellate brief, there is no evidence in the record demonstrating that appellant's

first issue has any merit.  Moreover, given the fact that appellant attended the

November 13, 2013 hearing and did not object to lack of notice at the time, any

complaint about service is waived.  *See* TEX. R. APP. P. 33.1(a); *see also Stallworth v.

Stallworth*, 201 S.W.3d 338, 346 (Tex. App.—Dallas 2006, no pet.) (explaining that a party

waives any complaint of error resulting from a trial court's failure to afford proper

notice under rule 245 by proceeding to trial and not objecting to lack of notice); *Custom-

Crete, Inc. v. K-Bar Servs.*, 82 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.)

("Error resulting from a . . . failure to provide parties proper notice . . . is waived if a

---

[4] In fact, the following exchange occurred at the November 13, 2013 hearing:

| [Counsel for appellees]: | Mrs. Scott, this lawsuit was filed in June of 2013.  You did receive a service of the lawsuit? |
| [Appellant]: | Yes, I did. |
| Q: | And you did, in fact, answer the suit in July; is that correct? |
| A: | Yes. |
| Q: | Okay.  So you were—and you were given notice, obviously, of the hearing today because you are appearing. |
| A: | Well, yes, I—I— |

party proceeds to trial and fails to object to the lack of notice."). We therefore overrule appellant's first and fourth issues.

## III.    EXCLUSION OF WITNESS TESTIMONY

In her second issue, appellant argues that the trial court improperly excluded the testimony of her husband, Hank, and her son, Sam, because neither would affirm an oath under the penalty of perjury.

Determining whether to admit or exclude evidence lies within the trial court's sound discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for the trial court's judgment. *Id.* We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012).

Evidence is relevant, and therefore admissible, if it has any tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401, 402; *see Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 237-38 (Tex. 2011). To determine relevancy, the trial court must look at the purpose for offering the evidence. *Serv. Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex. App.—Dallas 1993, no writ). There must be

some logical connection either directly or by inference between the fact offered and the fact to be proved. *Id.*

Here, appellee filed suit against appellant under section 33.41 of the Tax Code, which authorizes the initiation of suit to collect delinquent taxes. *See* TEX. TAX CODE ANN. § 33.41(a). Additionally, as stated below, section 42.09(a) of the Tax Code limits the grounds upon which a property owner may protest a property tax:

> (a) Except as provided by Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive and a property owner may not raise any of those grounds:
>
>> (1) in defense to a suit to enforce collection of delinquent taxes; or
>>
>> (2) as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

*Id.* § 42.09(a) (West 2008). Furthermore, section 42.09(b) of the Tax Code outlines the only affirmative defenses available to a person against whom a suit to collect a delinquent property tax is filed. *Id.* § 42.09(b). Specifically, section 42.09(b) provides the following:

> (b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:
>
>> (1) If the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or
>>
>> (2) If the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit seeking to foreclose the lien on January 1 of the year for which the tax was imposed.

*Id.*

With respect to Hank, the record demonstrates that appellant sought to offer his testimony to prove that the properties were used for educational and religious purposes and, thus, were not subject to taxation. However, appellant's contention that the properties were used for educational and religious purposes does not fall within the purview of section 42.09(b) of the Tax Code. *See id.* Accordingly, Hank's testimony about the usage of the properties is irrelevant and, therefore, inadmissible. *See* TEX. R. EVID. 401, 402; TEX. TAX CODE ANN. § 42.09(b); *see also City of Shenandoah v. Jimmy Swaggart Evangelistic Ass'n*, 785 S.W.2d 899, 903 (Tex. App.—Beaumont 1990, writ denied) ("We hold that the trial court was without jurisdiction to permit appellee [tax payer] to raise any defense or ground of protest [including the religious tax exemption] contrary to those permitted in Sec. 42.09.") (citing *Appraisal Review Bd. v. Int'l Church of the Foursquare Gospel*, 719 S.W.2d 160, 160 (Tex. 1986) (per curiam); *Bullock v. Amoco Prod. Co.*, 608 S.W.2d 899, 901 (Tex. 1980)); *Martin*, 855 S.W.2d at 822. And because we must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, we cannot say that the trial court abused its discretion in excluding Hank's testimony. *See Avinger Timber, LLC*, 386 S.W.3d at 264; *Malone*, 972 S.W.2d at 43; *see also McShane*, 239 S.W.3d at 234; *Wright*, 79 S.W.3d at 52.

Apparently, appellant sought to proffer Sam's testimony at the hearing on the contests filed in response to appellant's affidavit of indigence. However, we do not have a transcript from this hearing. In any event, the docketing statement indicates that

appellant testified, but Sam was not allowed to testify because he refused to testify under penalty of perjury. But, without a transcript of the hearing to provide context, we cannot say that the trial court abused its discretion in excluding Sam's testimony at the hearing on appellant's indigence. *See McShane*, 239 S.W.3d at 234; *see also Wright*, 79 S.W.3d at 52. As such, we overrule appellant's second issue.

## IV.  ASSISTANCE OF COUNSEL

In her third issue, appellant complains that the trial court's denial of her request for assistance of counsel at the November 13, 2013 hearing amounted to a due-process violation. Appellant does not cite any relevant authority in support of this issue. *See* TEX. R. APP. P. 38.1(i). Nevertheless, based on our review of the record, we conclude that appellant's complaint in this issue is without merit.

On appeal, appellant argues that the trial court improperly rejected her request to allow Hank, her husband, to act as her "assistance of counsel." "Texas law prohibits unlicensed persons from practicing law without a license." *Drew v. Unauthorized Practice of Law Comm'n*, 970 S.W.2d 152, 153 (Tex. App.—Austin 1998, pet. denied) (citing TEX. GOV'T CODE ANN. §§ 83.001-.006 (West 2013)). In describing the practice of law, the Texas Supreme Court has explained:

> [T]he practice of law embraces the preparation of pleadings and other papers incident to actions of special proceedings and the management of the actions and proceedings on behalf of clients before judges in courts as well as services rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined. This definition is not exclusive and does not deprive the judicial branch of the power and authority both under this Act and the

adjudicated cases to determine whether other services and acts not enumerated in this Act may constitute the practice of law.

*Unauthorized Practice Comm. of the State Bar of Tex. v. Cortez*, 692 S.W.2d 47, 49 (Tex. 1985).

In a case similar to the one at bar, the First Court of Appeals considered whether a mother, who was not licensed to practice law, could represent her son in an original proceeding. *Magaha v. Holmes*, 886 S.W.2d 447, 448 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding) (per curiam). In concluding that she could not, the First Court of Appeals noted:

> Courts have the inherent power to inquire into the qualifications of those persons practicing law therein. This power is essential to the fair administration of justice and an orderly discharge of the judicial function. With this in mind, we note that the relator is represented in this mandamus proceeding by his mother, Elissa Magaha, whom the relator has designated his authorized representative. She is not an attorney (and does not hold herself out to be). . . .
>
> In representing the relator, Elissa Magaha is engaged in the practice of law as our legislature has defined that term. . . . Because she is not a member of the state bar and does not fit within the categories of persons for whom the supreme court may promulgate rules allowing a limited practice of law, she is not authorized to represent the relator.

*Id.* (internal citations and quotations omitted).

Here, the record reveals that Hank is not named as a party to this matter, nor is he a licensed attorney.[5] Given this, we cannot say that the trial court erred in denying

---

[5] Contrary to Hank's contention in the trial court that the properties are community property, it was argued that appellant inherited the properties in question as her separate property. *See* TEX. FAM. CODE ANN. § 3.001 (West 2006) (providing that a spouse's separate property consists of property owned or claimed by the spouse before marriage and property acquired during the marriage by gift, devise, or descent); *see also Hinton v. Burns*, 433 S.W.3d 189, 197 (Tex. App.—Dallas 2014, no pet.).

Hank's request to provide appellant "assistance of counsel." *See Cortez*, 692 S.W.2d at 49; *see also Drew*, 970 S.W.2d at 153; *Magaha*, 886 S.W.2d at 448. As such, we overrule appellant's third issue.[6]

### V. BILL FOR FEES AND A COPY OF THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her fifth issue, appellant asserts that the trial court abused its discretion in denying her a bill for fees and a copy of the clerk's record paid for on appeal and of the trial court's findings of fact and conclusions of law. However, in her reply brief, appellant admits that she received a copy of the clerk's record from this Court free of charge, even though the trial court had previously determined that appellant is not indigent. Furthermore, appellant's complaint in this issue is undermined by the fact that she attached numerous excerpts from the clerk's record to her "Preliminary Appellant's Brief." Among the attachments is the trial court's findings of fact and conclusions of law. Based on the foregoing, we conclude that appellant's complaints about the clerk's record and the trial court's findings of fact and conclusions of law lack merit. And because appellant was provided a copy of the clerk's record by this Court

---

[6] Appellant also appears to challenge the trial court's denial of her request for a jury trial, which was made on the day of trial. However, as noted in its conclusions of law, the trial court denied appellant's jury request as untimely. Indeed, appellant first asserted her right to a jury trial in her "Counter Suit[,] Plaintiff's Plea[,] and Original Answer," which was filed the day before the November 13, 2013 hearing. Pursuant to Texas Rule of Civil Procedure 216(a), appellant's request was untimely. *See* TEX. R. CIV. P. 216(a) ("No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance."). Furthermore, in her brief, appellant has not cited any relevant authority in support of her complaint about the trial court's denial of her jury request. *See* TEX. R. APP. P. 38.1(i). Accordingly, we conclude that this complaint lacks merit.

free of charge, we fail to see appellant's need for a bill for fees for the clerk's record. Accordingly, we overrule appellant's fifth issue.

## VI.   CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.  Absent a specific exemption, the Clerk of the Court must collect filing fees at the time a document is presented for filing.  *Id.* at R. 12.1(b); Appendix to TEX. R. APP. P., Order Regarding Fees (Amended Aug. 28, 2007, eff. Sept. 1, 2007); *see* TEX. R. APP. P. 5; 10TH TEX. APP. (WACO) LOC. R. 5; TEX. GOV'T CODE ANN. §§ 51.207(b), 51,208, 51.941(a) (West 2013).  Under these circumstances, we suspend the rule and order the Clerk to write off all unpaid filing fees in this case.  TEX. R. APP. P. 2.  The write-off of the fees from the accounts receivable of the Court in no way eliminates or reduces the fees owed.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed October 16, 2014
[CV06]

